All right, Mr. Gibbons, we start our first case, Conner v. Cleveland County, and when you're ready, we'd be pleased to hear from you. Thank you, Your Honor. May it please the Court, my name is Phil Gibbons, and I represent the appellant, Sarah Conner. Conner alleges violations of the overtime provisions of the Fair Labor Standards Act and breach of contract against her former employer, Cleveland County, NC. The District Court dismissed Conner's FLSA claim under Rule 12c and declined to exercise supplemental jurisdiction over a breach of contract claim. The appeal focuses on Conner's FLSA claim, and the primary issue before the Court is whether the FLSA requires an employer to pay all regular straight-time wages owed to an employee before it can treat additional compensation paid to the employee as overtime pay. What's the advantage to you from having it done that way? Your Honor, I missed that question. What is the advantage to you from having the computation proceed in that fashion? The FLSA, Your Honor? Computing the straight time before moving into overtime. Well, Your Honor, under their pay plan, they compute both the straight time and the overtime under a pay plan that results in a reduction in their salary. And so there is no advantage under their pay plan. It works to the detriment of the employee because the employees don't receive their full salary. Mr. Gibbons, let me ask you this. Is the county appropriation ordinance in the record before us, or is the 14-day pay plan in the record before us? Your Honor, the county ordinance is not in the record. It was alleged in the complaint. The pay plan is in the record. It was in the record for a limited reason to demonstrate that the defendant, Cleveland County, was aware of the term 24 hours on, 48 hours off. Before the district court, they represented that they did not know the meaning of that term. And so the Section 14 pay plan was entered into the record, and it repeatedly refers to their employees as 24-hour on, 48-hour off personnel, including it states that this is the method we use to pay overtime, 24-hour on, 48-hour personnel. Is there a written employment contract in this case? In this case, there's an ordinance that specifies that all county employees are to be paid a salary, and that that ordinance applies to Connor, and it also applies to the class that she seeks to represent. And under North Carolina law, there's that relationship, the promise to pay the wages is a quasi-contract, and it's been recognized under state law as a contract. Where do we find the hourly wage? Your Honor, it would be the calculation. It would be under the Fair Labor Standards Act. Employees are entitled to be paid time and a half for all hours worked over 40. I understand that, but where do we find the hourly wage for straight time? For the county, what they do is they take the annual salary, they divide it by the total number of hours that the 24-hour on, 48-hour employees work, which is 2,928. And they come up with an hourly rate. They multiply that hourly rate by 1.5 times, and that's the overtime rate paid for each hour worked over 40. And there's a dispute over the hourly rate? The dispute comes in where they repay the regular wages because the regular rate of pay is the amount. It's an actual mathematical amount. It's not a label, and the regular rate is supposed to be the amount that you actually pay your employee, and it's also how you get to the overtime. It's 1.5 times. What is the regular rate that you're paying? What is the hourly rate that you're paying this employee? Do you know that the employer is paying the employee? It varied at different times because she made different amounts, and each member of the class made different amounts. But at one point in time, she made $36,900, and they divided that by 2,928 hours, and that came up with an hourly rate of pay. And then they multiplied that hourly rate by 1.5 times. And what was the hourly rate that they came up with? I don't have that in front of me. She worked for them for several years, and it changed over time. But the hourly rate that she was paid, that's not the problem in this case. Where the problem arises is that they used a portion of her salary to subsidize the overtime payment that they owed her. So let me ask you, so maybe this can get a little convoluted in terms of where we're going. The issue here, it seems to me, whether or not first, do we in fact in Monaghan recognize this overtime gap, overtime gap time as a claim? And if we are there, then could you give us, pick a period of time in which you say this thing is violative so it illustrates what the problem is, and use some numbers to let us know how it is that your client has been underpaid under this scheme in light of Monaghan. We'll start with the assumption Monaghan does do that. There will be some contention on that. But if Monaghan does recognize such a claim, then how is it that your client is underpaid or has been underpaid? Using a specific example, because that helps to simplify it. I mean, we're going to bounce all over the place if we're looking at different time periods here. But the concept is the same for one that fits them all, I think. OK, I think it may be easier to use a hypothetical because it does get very convoluted unless you're working the math. Use the hypothetical. OK, so it is applicable in illustrating what you are talking about here where you don't have a definitive type of hourly wage. But under these circumstances, you maintain that the Monaghan recognition of overtime gap claim is being violated here. Yes, Your Honor. So let's assume that I have an employee and I agree to pay her a salary of $500 for her regular straight time wages. And I agree to pay time and a half for all hours worked over 40. At the end of the week, the employee works 50 hours. We would calculate the regular rate of pay by dividing $500 by 50 hours and would come up with an hourly rate of $10 an hour. That would be a regular rate. The $10 would be multiplied by one point five for $15 an hour. So under these facts, I'd owe the employees $650 for that week, 500, which is their salary and 150, which is the overtime wages. That'd be 10 overtime hours times 50 times $15 an hour. But let's assume on payday instead of paying her $650. I provide a paycheck for 550. Instead of paying the $550 that I agreed to, I take her regular rate, which is the $10 and multiply it only by 40 hours to come up with $400. And then I pay an additional $150, which I allocate towards overtime. So on her pay stub, I'm showing that $400 is her straight time pay and 150 is her overtime pay. I wonder if you're not making this more complicated than it needs to be. I have the same question that my colleague has about exactly how we go about these computations and exactly how you're being underpaid. I wonder why the computation isn't as simple as you have a number of hours work per week times the amount per hour. And you compute that initially. When you get to that, you pay the straight time pay first, which is the number of hours that would be 40 or less. And then you find out how many overtime hours there were. But I don't understand why it isn't just a computation which just takes the number of hours work times the amount per hour. You do it on a weekly basis. And then you take all the straight time, which is 40 and under. You pay that at the regular rate. And then you pay any overage for 1.5, the overtime rate. And so, you know, maybe I'm too simplistic, but I thought that was the way one would normally go about it. And I don't understand it. It seems to have assumed a very convoluted quality. The reason it's convoluted is because of the Section 14 pay plan. What you have to realize is these employees are promised a salary under the ordinance. The county takes the salary and they do convert it to an hourly rate, which is fine. They multiply that hourly rate by 1.5 times for overtime, and that's fine. But instead of then paying 1.24 of the salary as the regular pay, they do an additional step where they reduce the regular salary and pay an amount less than their salary. So, in other words, if the salary is supposed to be 500 and you have 150 in overtime, they're paying 400 to you plus the 150 in overtime. And the question is whether they can underpay the regular wages and simply allocate money to overtime and say, well, we satisfied our overtime obligation. You can see it here on the pay stuff without first paying all of the underlying regular wages. And that's what the statute in Monaghan addressed is whether during weeks you work overtime, an employer has to first pay all of the regular straight time wages before that employer can count the money he allocates towards overtime as overtime. Does this occur where you have, in your example, you indicate the company had agreed to pay the salary of $500, which made the difference of the 650 in that. And then in the example, you went to the $10 per hour. If it was straight hourly wage, no mention of a salary, you make $10 an hour, then if that was just that and that alone, would there be any violation to pay them 550 with a straight $10 an hour wage with no mention of a salary? Well, again, and this is what the holding was in Monaghan. You have to go back and look at the agreement of the parties. If the agreement was to pay $10 per hour, then it would be an hourly employee. And that would be correct. But if the agreement was to pay $500 per week and then you went and did a mathematical calculation that reduced that, then it is incorrect because you haven't paid all of the promised wages. So the difference I'm just making a difference because I think that's where we sort of not following you quite well. And that is if it is nothing but just an hourly rate we're talking about, that's one thing. But in this instance, you actually have a promised salary. And then converting that salary using that formula actually reduces it to an hourly rate that yields a, I guess, a lower rate than what is promised when you add in the actual overtime that's paid here. Yes, Your Honor. Mr. Gibbons, why isn't it reasonable to assume that it's the ordinance provided that an employee like your client is to receive $36,900? That's her salary and that covers her working 40 hours a week. Where do we get this idea that overtime is included in that $36,900? Well, it's not supposed to be included, Your Honor, but the mathematical calculation that the county uses includes it. What they do is after they use the $36,900 as the regular rate to figure out the overtime, but then they do an additional math step that takes about a third of that salary and pushes it into overtime. They simply label that money instead of regular wages, which is what the promise is. They call it overtime wages. The problem with this is if you look at Section 207, which is the statute under the Fair Labor Standards Act that addresses overtime, overtime is based on the regular rate of pay. Back in 1945, the Supreme Court said that the regular rate is not a label. It's a mathematical fact. And so you should be able to go back and reverse engineer how the overtime relates to the regular rate. If they use $36,900 and turn that into an hourly amount for the purpose of overtime, when you reverse engineer that, you should end up back at $36,900 for your regular wages. Otherwise, there's a regular rate violation. They're running afoul. It simply becomes a label instead of a mathematical certainty. And so under these circumstances, this is a math issue, but it's a math issue that results in the county using part of these employees' salaries to pay their overtime. But how do we know that this is impermissible to push one third into overtime until we actually know the number of hours worked? See, Your Honor, this is the issue that's really before the court here, because this was decided under a Rule 12c motion. There is no record before the court to determine exactly what the arrangement is or the agreement is between the parties. In other words, it could be legitimate to push one third. It could be legitimate, depending on how many hours you actually work. It either could be that determines the legitimacy of pushing part of the regular time into overtime. If you work under 40 hours per week, it wouldn't be a problem, would there? If you work less than 40, no. But in this situation, these employees work 48 hours a week, then they work 72 hours a week. They work on a rotating schedule where every week they work overtime. The problem, again, comes back to what is the agreement between the parties? If the agreement is to pay the full amount of the salary as your regular wages under the Fair Labor Standards Act, you have to first pay all of those wages before you can count additional compensation as overtime. And what they're doing here is they're figuring out the overtime rate, paying that for all of the overtime hours. But going back in and recalculating the salary through a mathematical problem that ends up apportioning about two thirds of their salary as regular wages, and then the other third ends up not being paid as regular wages. And their argument is, well, the agreement was to use that to pay overtime. It's mathematically impossible under the Fair Labor Standards Act, though. When you look at the regular rate calculation, if you start with $36,000 as your regular rate, that is the amount that you're supposed to pay to the employee exclusive of overtime. And if you use that as the regular rate calculation, which they do, and you come up with an hourly rate for overtime, and then when you pay the regular wages, you fail to pay the full amount, you're in violation of the Fair Labor Standards Act. You're in violation of Monahan. Is the bottom line of what you're concluding is that they've got to pay the full $36,900 regular time before they even get into overtime? Correct, on a per pay period basis. I mean, in other words, $36,900 divided by the 24. And you're saying that the employee is due that regardless of the number of hours worked because it's a contractual obligation? Correct, that's their salary for their regular springtime hours. Overtime is paid in addition to that. Regardless, their salary of $36,900 is their salary, and it doesn't make any difference how many hours they work. Actually, they are entitled to the $36,900. Right. And then how do you figure, and they have to pay that initially, and then how do you go into the overtime? In order to get the overtime, you do have to go into the hours worked, don't you? Well, yes. Yes, of course, you have to go into the hours worked, and they do that. The issue here is they actually label money, they pay money that they allocate as overtime, but they underpay the regular wages. And that's exactly what the issue was in Monaghan and what the regulation that issue here says that you cannot do. You have to first pay all the underlying regular wages before you can treat additional money as overtime. The $36,900, that's exclusive of the number of hours worked. It's not dependent on that at all. Correct. Correct. Yes. Okay. Once you get that, they say, all right, that's the salary. That's the regular time. You have to pay that regardless of how many hours you work. And then you go into a separate calculation, which is the overtime. But to figure that, you do have to look at the number of hours actually worked beyond 40, because that would be classic overtime. In other words, your position is you have to pay the $36,900 exclusive of hours worked. You then go into overtime and find out, you know, based on, you have to then make a calculation of the number of hours worked to get to the overtime. And that is 1.5, whatever the hourly wage might be. But doesn't that all depend on how the employment agreement is structured? Yes, Your Honor. And that's the issue before the court. At 12C, it was improper for the court to simply find that the agreement was just a matter of contract and it had no bearing on the Fair Labor Standards Act. In Monaghan, what the court found is in weeks that you work overtime and there's an allegation that the regular wages have not been paid, the court has to first look to the agreement of the parties to determine whether all the regular wages had been paid. So you're saying that they cannot contract just for $36,900 as an annual salary and sort of leave the Fair Labor Standards Act behind? Well, Your Honor, these employees are non-exempt employees. And in the ordinance, the way that the county has agreed, rather than using comp time, what they agreed to do for these employees is pay them time and a half based on that hourly rate, based on the calculation that we discussed, the salary divided by the 2,928 hours. But the overriding issue is the fact that they don't pay the entire, the full salary, right? They pay less than the full salary plus an amount of overtime that our position is they arbitrarily label as overtime because if the Fair Labor Standards Act is correct and Monaghan's correct, that money can't be treated as overtime until they've paid that salary. All right, let me ask my colleagues, Judge Wynn and Judge Floyd, if they have any questions of you. Otherwise, we're going to go directly and hear from Mr. Edwards. Judge Wynn, do you have any questions? I have no further questions at this point. Judge Floyd? No, I don't have anything further. Thank you, Your Honor. All right, let's hear from Mr. Edwards. Mr. Edwards, we are happy to hear from you. Thank you, Judge Wilkinson, and may it please the court. We are here today to ask that this court affirm the district court's judgment. I think your colloquy with Mr. Gibbons has highlighted two significant flaws in this complaint that support the decision made by the district court. I hope in my second point to be able to add some clarity to this contract wage calculation issue. I understand it is a very complicated issue, but I want to first start by addressing your concern, Judge Wilkinson, that we don't actually know if Ms. Connor has worked so-called overtime gap time. So, assuming without conceding that her salary was $36,900, there are no allegations in the complaint under the standard set out by this court in Hall against Direct TV to show that she actually worked more than 40 hours in a given work week. Instead, what we see in paragraph 9 of her amended complaint is that she was just scheduled to work. So, the first thing we need to know to determine under this court's decision in Monaghan that overtime gap time was worked is the total number of hours worked in a particular week. Because regardless of what the overtime gap time discussion in Monaghan means, the court emphatically rejected straight time gap time or gap time underpaid salary in weeks in which no overtime was worked. But in order to find out the number of hours that she actually worked, don't we need some discovery and some further look into that on the part of the district court? No, Judge Wilkinson, I don't think so. And here's why. So, in the Hall decision, this court said that under the Fair Labor Standards Act, regardless of, even though it did not adopt this full accounting standard that some district courts have used, the court said we're not adopting a form pleading where the plaintiff can say I worked 40 hours or more in all or some work weeks. You can't just plead that you worked overtime. And here, Ms. Conner's allegation is one step removed from that. She's actually alleged I was scheduled to work overtime. And so, I don't think at this stage, I am sympathetic to the idea that on some of these issues, discovery might be proper, but not here where Ms. Conner knows how many hours she worked in a given work week and could have alleged that. You know, I would submit to the court that it is strategic to allege I was scheduled to work rather than I worked. Who has the burden of record keeping here with respect to the number of hours she worked? Is that the plaintiff's or is that the county's? In Hall, the court did recognize that the employer has kind of all of the information that the plaintiff needs, but even so, the court said it's not enough to simply allege, just as a matter of fact, I was scheduled to work overtime or I worked overtime in some weeks. There does need to be some recognition that there was overtime work in a specific work week. And here, Ms. Conner has not done that. So, let me understand where you are. It seems as though we at least are moving under the belief that Monaghan does recognize an overtime gap claim. You don't see a gap time claim. So, we haven't broached that issue. You've moved into the evidentiary aspect of it, and that is dealing with the complaint alleges. And if I understand you correctly, you are saying that this complaint is insufficiently alleging that she worked more than 40 hours in a week and that she does not allege appropriately that she's not been paid all of the straight time compensation for which she was owed. And that would seem to, if she had done that, that surely would seem to implicate Monaghan insofar as an unpaid overtime gap time claim. But your allegation under your statement says that the complaint insufficiently does not allege, even when we use all of the pleading liberal alleges and everything, it insufficiently alleges that she worked more than 40 hours. Is that where you're hanging your head on this particular case? Because that seems to be where you're going, to me. Judge Wynn, I want to take that in a couple steps. So, all of my arguments up until the very last argument I intend to make do assume that Monaghan recognizes this claim because the county's position is that for at least two reasons, the complaint is insufficient to state a fair labor standards act claim. So, I want to make sure in terms of the facts of what's here. As I recall, it seems like her schedule says 24 hours on, 48 hours off. And that seems to indicate if you do that, that's more than 40 hours. If you're 24 hours on, 48 hours off. I agree that that is more than 40 hours in a given week. I do think, though, that the issue is that haul. No, no. Let's stick where we are in there. I want to make sure we get that. Then we'll tell the application of all. So, what you've just said is the complaint does sufficiently allege that she works more than 40 hours per week. Is that right? Okay. So, let me make sure I understand it. Schedules for 24 hours on, 48 hours off, then 24 hours. That's 48 hours. So, why is that not more than 40 if you allege that? She's alleged she was scheduled to work. She has very carefully not alleged that she actually worked any time in a given week. I thought she said her schedule is that. Not I am scheduled to work. You sort of work by, I guess in terms of the type of work that you do. You're dealing with police officers. You're dealing with first responders. If you have a schedule, that's what you work. I don't know how else you say it. You say, would I work this? I work that. But if the schedule tells you this is what you do, do you have anything to indicate she did not, this is not what she's supposed to be? In other words, I am designated to do this. It's a terminology. I don't know if we get, where do we get, I mean, how do we get hung up on schedule if that's what she does? So, I think there are a couple of responses to that, Judge Wynn. Because that's kind of the way they talk, isn't it? I mean, you know, a police officer has a schedule. I have a schedule to work 24 hours on, or a nurse has 24 hours on. Isn't that kind of it? But you're turning this on to say that doesn't mean she actually did it, or it's not sufficient to say she does it just because her schedule says it, which means she can violate a schedule to a lesser amount. She doesn't have to work 24. She'll work 20 hours and says, okay, I'm only going to do 40, and I'm going to just do my 20 hours and I'm out of here. Is that where you're going with this? I think more facts are needed to demonstrate. So, if we look at, for example, That's what Judge Wilkinson said. That's what he said, why discovery is needed. I don't think it's discovery. I think that Ms. Conner invoking the jurisdiction of the federal court is required to plead sufficient facts to show that she actually worked more than 40 hours in a work week. If we look, we want to talk about schedules and we look at your opinion in fire and safety, the 2019 decision that Ms. Conner cites, the employees in that case were scheduled to work a full hitch. But in many occasions, they work less than a full hitch. They were. And so there was a dispute about the blended rate that they were paid. But I think that that's emblematic of the fact that sometimes when a person is scheduled to work, you know, 48, 72, 168 hours in a work week or in a period, it doesn't necessarily mean that that person actually worked that amount. Mr. Edwards, let me ask you, at JA 21, there is a consent to become a party plaintiff. And this client, Ms. Conner, says by signing below, I state that I have been employed by Cleveland County Emergency Medical Services within the past three years as a full time emergency medical technician. And that I work 24 hours on and 48 hours off schedule during one or more weeks. Why? That's in the record. It is, Judge Floyd. And I believe we dealt with that in our brief. As I read that, that is, again, just a statement. She was scheduled to work. I work the schedule. It means she, in my understanding, she was scheduled to work that time without. It doesn't say I was scheduled to work. She says that I work 24 hours. Judge Floyd, even if that's true, the court can still affirm the district court's judgment by determining that under the framework set out in Monaghan, she's not been underpaid her contractual wages. And so the Section 14 pay plan, which is at Supplemental Appendix 1, is very complicated. But I want to walk the court through what Ms. Conner's salary was versus what the target compensation identified in the ordinance was. Ms. Conner says that she was paid a salary of $36,900. And that's not true. If we look, there are several pieces of her employment contract. And so in Monaghan, this court looked at a host of official policies to determine what the employment contract was. And so we do have the ordinance that requires semi-monthly pay. We also have where that $36,900 number, which appears at paragraph 46 of the complaint, that number comes from a document called the Cleveland County Salary Ranges by Grade and Classification. Mr. Edwards, let me ask you this, because what Judge Wynn and Judge Boyer said resonates with me. And that is, when you say that she's scheduled to work 48 hours a week, and then there's a dispute about whether she worked the amount that she was scheduled to work. But if she's scheduled to work 48 hours a week, isn't that prima facie evidence, at least, maybe not conclusive, but isn't that prima facie evidence that she did, in fact, work 48 hours a week? And wouldn't that be something that would be best sorted out by this report on remand? Isn't the fact that she was scheduled for that many hours enough to get her over the 12V6 or 12C pump? And how she would fare on summary judgment or beyond, I don't know. But when you've got that, what seems to me, prima facie evidence that your own schedule indicates she was supposed to work 48 hours, it seems to me that may be a kind of a shift in the burden of production. So why isn't it appropriate, and this is so convoluted and everything, but I want to make sure that we're not confronting here a very tricky system, which is depriving by a mathematical sleight of hand the money that this employee is due under the FLSA. And what I'm concerned about is why don't we send this back and say, you know, the county should explain why she didn't, and she should explain that there should be a discovery as to whether or not she worked the hour she was scheduled to. And then go from there and say, once that question is answered, then the question becomes whether the county says under the Monaghan case, which, you know, is not my favorite, but it's our precedent, we've got to follow it because there it is. And we need to find out, under Monaghan, whether one way or another, there was a pushing of overtime into regular hours of work in order to avoid overtime pay or some other kind of payment. But why doesn't this case just need a whole lot of fleshing out more than it was given? That's the question I have. Judge Wilkinson, I hear kind of two questions or two concerns. And so on the first concern about the amount of hours she was scheduled to work, I think that the court can affirm the district court's judgment, regardless of the number of hours she was scheduled to work. Because Ms. Connor has included sufficient allegations in the complaint. She's referenced the Section 14 pay plan. She submitted it to the district court. If we look at all of the aspects of her contract, she cannot show that she was underpaid as Monaghan uses that term. So she can't show that the county shorted her any money under her contract. Ms. Connor admits that the Section 14 pay plan is part of her contract because she admits that the county's EMS's standard operating guidelines are part of that contract at paragraphs 42, 43, and 44 of the complaint. So she says and recognizes that the county is bound by those. And then she herself doesn't want to be bound by them. If we put that $36,900 number through the Section 14 pay plan, it gets a regular hourly rate of $12.60 an hour. And that's what she was paid. And if we look at the regular rate based under the interpretations, 778.108 and then 778.113, which tell us how to calculate the regular rate or semi-monthly pay schedules, her regular rate receiving $1,092 every semi-monthly pay period was $12.60 an hour. Ms. Connor's fundamental allegation is a misunderstanding of the county's pay plan. The county's pay plan is not, it's not a shell game. It's not, in many cases, where there's a blended rate and there's a real dispute over what the regular rate at which overtime is due is. The county's contract itself is part of, the pay plan is part of that contract in addition to the EMS's. So, Ms. Connor is skipping a step and instead saying, I'm entitled to $36,900. Well, doesn't that all follow if you, if you, if you, if this was a state contract action, I think everything you say seems to me to follow. That's not what a trial judge did here. The court didn't base this on any actual merits of the claim, but instead on the fact that the employment agreement facially did not violate wage, minimum wage or overtime provisions on the FLSA. So, I mean, it's an apple and orange thing. That's what you're trying to do is to say this doesn't belong in federal court. Pursue the state claim. And if you pursue the state claim on a contract thing, it seems to me you, you probably are making a really good argument. But that's, that doesn't seem to be the direction that this goes in terms of the Fair Labor Standards Act. Judge Wynne, I think I understand your point that that's not what the district court did. But as we've cited, as we've indicated in our brief, this court's reviewing the district court's judgment, not the particulars of its decision. And so this is the same type of. So we so we can ignore his reasoning and create our own here because we we can. In other words, we can become the district court here and and do what you say should be done, as opposed to what was actually done. Judge Wynne, I believe that this court can determine that the FLSA claim is infirm in the first instance on this basis. The district court, I I hesitate to say this, but I will not defend the district court's application on the merits here. But even so, the result is right. And in this case, judicial economy counsels in favor where Miss Conner has plead her pleaded herself out of court by demonstrating what the terms of her contract are. And then demonstrating that the county satisfied those contract terms under Monaghan. The first step of the Monaghan test requires officially, facially. She's pled and you disagree that she's she's facially pled that she worked in excess of 48, 40 hours and was not paid overtime for it. Then she makes the allegation. You say that Hall, I gather what you're saying is that Hall requires some type of actual proof. I don't quite read Hall as being so rigid. It seems like you only need a plausible basis for it in the complaint. And that seems to be satisfied here. Judge Wynne, I want to separate these two arguments. The Hall standard only relates to the number of hours that she's worked. In this case, if you assume she worked every hour for which she was scheduled, she has still been paid every dollar owed under her contract. And we know that because she's alleged her quote unquote salary, which I think is a legal conclusion as to what she's entitled to be paid. And this court can look at the other documents referenced in an interval to the complaint. Why should we be looking at the other documents? Why can't the district court look at all the other documents and find out whether she's been paid the straight time that she's owed, whether the straight time was calculated initially, and then whether there was overtime, and whether she was paid overtime after the straight time was calculated. But I don't understand why that is our job to do all these calculations up here without an initial period of discovery for the district court to say what you now say, that she's been fully paid. But I'm not sure the district court reached that decision. I don't think it's our job to go through all of these calculations in the initial instance, maybe later on. But at any rate, I'm going to ask my colleagues if they have further questions of you. Judge Wynn, do you have more questions of Ms. Edwards? I have no further questions. Thank you. All right, Judge Floyd. No questions. All right, Mr. Gibbons. All right, you have some rebuttal time scheduled. Your Honor, I go back to my original argument that under Monaghan, the court needs to first look at what the employment agreement is. The Section 14 pay plan, whether it's part of the contract or not, if it violates the FLSA, in other words, if by moving part of the salary into overtime is not permitted under the FLSA, then you've got an unlawful contract. It's not enforceable. And we would fall back to what the salary should be. But again, as you pointed out, Judge Wilkinson, it's not your job to do that. This is the job of the district court. And my client should have the ability to prove her case. And, you know, we would ask that the case be remanded. Mr. Gibbons, as I understand it, the bottom line that you are concerned about here is that the company may have been moving overtime pay into regular salary. Is that correct? Well, my main concern is that if indeed she was entitled to thirty six thousand nine hundred dollars in straight regular wages, she wasn't paid it. And the employer concedes that they agree. And what they're saying is that under their version of the contract, they don't have to pay that. They could split it up and apply some of it to overtime. And what I'm saying is if you use the salary to create or to calculate the regular rate, that's the amount under Supreme Court precedent that you're supposed to pay the employee exclusive of overtime. And Cleveland County admits they don't pay that. They use thirty six thousand nine hundred to determine the regular rate and create the overtime amount. But then they turn around and pay two thirds of that amount as regular wages. And again, under Walling, going back to 1945, you can't just label something as the regular rate. It's a mathematical certainty. In very simple terms, without going through this, this, this and this. Just tell us in very short, brief, commonsensical terms what it is. A few lines that you are concerned about. Brevity is important. What I'm concerned about is that the company allocated money as overtime pay. They paid my client money that they designated as an overtime without first paying all of her regular wages, which violates the regulation and violates the statute. And on that issue, this idea that she pledged she didn't work overtime, her entire claim is that the money you paid me and allocated towards overtime for the overtime hours I worked can't be treated as overtime because you didn't first pay my regular wages. But doesn't that seem to follow that if the county paid her overtime? It is a bit odd. It is a bit odd, Mr. Givens, because normally, or a lot of that, a lot of state plaintiffs come up here and they want time classified as overtime. Because they get time and a half. But it seems to me you have something of a reverse spin in a way. You want overtime classified as regular time. And I understand why you do. But isn't this a little bit of a reverse spin in the sense that most plaintiffs want time classified as overtime? And you're saying no. Well, I don't understand why, but it is. It's an odd spin, isn't it? It is. But it's the employers doing right. If they're going to allocate money and label it as overtime and not pay the regular wages, the results the same. The employee still ends up getting paid less. Right. If they don't pay the if they pay the regular wages, but then short the overtime, the result comes out the same. The employee makes less than he or she should make. And that's the result here. But what's what's interesting, we plead this in the complaint. As of January 1st, 2018, after we filed the lawsuit, exactly. Cleveland County did exactly what I'm saying they should do here. And they started paying the entire salary and they took the step out that reduces the salary as part of the Section 14 pay plan. And that's what the court's going to see if this case gets sent back, is that they did correct this and they started paying the actual full salary as they should under the Fair Labor Standards Act from January 1st, 2018 on. Your Honor, I'm out of time. All right. Thank you. Do my colleagues have any questions? No, Your Honor. No, sir. All right. Thank you both very much for your presentation. We appreciate it a great deal.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Henry F. Floyd